**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

REGINALD SLACK,            )
            )
         Plaintiff,      )
            )
vs.                  )     CASE NO.: 3:12 cv 161
            )
EMERGENCY MEDICAL SERVICE    )
CORPORATION; AMERICAN      )
MEDICAL RESPONSE, INC.; and EMS   )
MANAGEMENT, LLC.       )
            )
         Defendants.   )
            )
_____/

## COMPLAINT

COMES NOW, Plaintiff, REGINALD SLACK (hereinafter referred to as "Plaintiff"), by and through the undersigned counsel, and sues EMERGENCY MEDICAL SERVICE CORPORATION; AMERICAN MEDICAL RESPONSE, INC; and EMS MANAGEMENT, LLC. and alleges the following:

### JURISDICTION AND VENUE

1.     This is an action based upon the Family Medical Leave Act, 29 U.S.C. 2601, et seq. (FMLA).

2.     Jurisdiction over Plaintiff's claim is conferred by 28 U.S.C. 1331 because these actions arise under the laws of the United States.

**3.**     Venue is appropriate in this Court because the activities which give rise to this Complaint occurred in Pensacola, Escambia County, Florida.

### THE PARTIES

4.      Plaintiff is a resident of the State of Florida and resides in this District.

5.      Defendant, EMERGENCY MEDICAL SERVICES CORPORATION, is a foreign corporation which transacts business in the State of Florida, including Pensacola, Florida, under its own name and under the name of its affiliated companies AMERICAN MEDICAL RESPONSE, INC; EMS MANAGEMENT, LLC. EMCARE, INC., AIR AMBULANCE SPECIALIST, INC., AND REIMBURSEMENT TECHNOLOGIES, INC.

6.      Defendant, AMERICAN MEDICAL RESPONSE, INC., is a foreign corporation which transacts business in the State of Florida, including Pensacola, Florida, under its own name and under the name of its affiliated companies EMERGENCY MEDICAL SERVICES CORPORATION; EMS MANAGEMENT, LLC. EMCARE, INC., AIR AMBULANCE SPECIALIST, INC., AND REIMBURSEMENT TECHNOLOGIES, INC.

7.      Defendant, EMS MANAGEMENT, LLC., is a foreign corporation which transacts business in the State of Florida, including Pensacola, Florida, under its own name and under the name of its affiliated companies EMERGENCY MEDICAL SERVICES CORPORATION; AMERICAN MEDICAL RESPONSE, INC EMS MANAGEMENT, LLC. EMCARE, INC., AIR AMBULANCE SPECIALIST, INC., AND REIMBURSEMENT TECHNOLOGIES, INC.

8.      Defendant, EMERGENCY MEDICAL SERVICES CORPORATION, employs fifty (50) employees within a seventy-five mile radius of its location in Pensacola,

Florida for each working day during each of twenty or more calendar work weeks in 2010 and 2011.

9.   Plaintiff performed at least 1,250 hours of service for the Defendant, EMERGENCY MEDICAL SERVICES CORPORATION, in the twelve months prior to the acts alleged in this Complaint.

10.   Defendant, AMERICAN MEDICAL RESPONSE, INC., employs fifty (50) employees within a seventy-five mile radius of its location in Pensacola, Florida for each working day during each of twenty or more calendar work weeks in 2010 and 2011.

11.   Plaintiff performed at least 1,250 hours of service for the Defendant, AMERICAN MEDICAL RESPONSE, INC., in the twelve months prior to the acts alleged in this Complaint.

12.   Defendant, EMS MANAGEMENT, LLC., employs fifty (50) employees within a seventy-five mile radius of its location in Pensacola, Florida for each working day during each of twenty or more calendar work weeks in 2010 and 2011.

13.   Plaintiff performed at least 1,250 hours of service for the Defendant, EMS MANAGEMENT, LLC., in the twelve months prior to the acts alleged in this Complaint.

14.   Based on information and belief, EMERGENCY MEDICAL SERVICE, CORPORATION; AMERICAN MEDICAL RESPONSE, INC.; and EMS MANAGEMENT, have a common ownership, scheme, plan, and or common control such that they constitute a common entity or joint employers under the Family Medical Leave Act.  Moreover, the operations, practices, policies and

procedures, including those with respect to compensation, leave, policies and procedures, benefits, and medical leave are highly integrated and interdependent such that the Defendants constitute a single and/or joint employer under the law.

15.    The Defendants, EMERGENCY MEDICAL SERVICE, CORPORATION; AMERICAN MEDICAL RESPONSE, INC.; and EMS MANAGEMENT, LLC each individually or as a common ownership control the day to day operations of Plaintiff.

16.    EMERGENCY MEDICAL SERVICE, CORPORATION; AMERICAN MEDICAL RESPONSE, INC.; and EMS MANAGEMENT operate or control the day to day operations of American Medical Response and are actively involved in the day to day operations of the Plaintiff's employment, including matters concerning hiring, firing, payroll, setting policies, making procedures, setting goals, marketing, and other business operations.

17.    EMERGENCY MEDICAL SERVICE, CORPORATION was the Plaintiff's employer for purposes of the Family Medical Leave Act.

18.    AMERICAN MEDICAL RESPONSE, INC. was the Plaintiff's employer for purposes of the Family Medical Leave Act.

19.    EMS MANAGEMENT, LLC. was the Plaintiff's employer for purposes of the Family Medical Leave Act.

20.    Even if each of the Defendants, individually, did not employee fifty (50) employees within a seventy-five mile radius of Pensacola, Florida, for each working day during each of twenty or more calendar work weeks in 2010 and 2011, all three Defendants, combined employed fifty (50) employees within a

seventy-five mile radius of Pensacola, Florida, for each working day during each of twenty or more calendar work weeks in 2010 and 2011.   Because of the nature of the Plaintiff's employment and the interrelation between the Defendants, combining employees of the Defendants is appropriate because the Defendants would constitute a joint employer under the Family Medical Leave Act.

21.     The acts and omissions alleged in this Complaint were taken by employees, officers, and/or agents of the owner/operator of the Defendants, within the scope of authority of those employees, officers, and/or agents, and therefore were the actions and omissions of the Defendants.

## CONDITIONS PRECEDENT

22.     All conditions precedent to filing this action have been met.

## STATEMENT OF FACTS

23.     Plaintiff was first employed by Defendants on February 1, 2010.

24.     On December 31, 2010, Plaintiff was involved in an automobile accident.

25.     As a result of the accident, the Plaintiff was injured and began to receive medical care and treatment from a chiropractic physician.   This treatment began in January, 2011 and continued into February and March, 2011.

26.     As of February 2, 2011, Plaintiff had been employed by Defendants for at least 12 months and had worked at least 1250 hours in the preceding 12 months.

27.     Defendants, as of February 2, 2011, either individually or collectively, had at least 50 employees employed within 75 miles of the Plaintiff's place of employment in Pensacola, Florida.

28. Plaintiff was an employee under the Family Medical Leave Act.

29. Plaintiff was an employee of the Defendants under the Family Medical Leave Act.

30. Plaintiff also experienced sleep-related issues which were caused partially or totally as a result of the above referenced accident and injuries.

31. Plaintiff's injuries and medical conditions constituted a serious medical condition as outlined under the FMLA.

32. Plaintiff's injuries to his neck and back, his pain, and his inability to sleep were an illness, injury and/or a physical or mental medical condition.

33. The Plaintiff's injuries involved a period of incapacity, in January, February and March, 2011, that required absence of more than three calendar days from work and/or involved absences from work to receive multiple medical treatments by and/or on a referral from a medical provider for a condition that likely would result in incapacity of more than three calendar days if left untreated.

34. In January February and March, 2011, the Plaintiff was taken off work by his health care providers for a period of more than three calendar days and/or involved absences from work to receive multiple medical treatments by and/or on a referral from a medical provider for a condition that would result in incapacity of more than three calendar days if left untreated.

35. Plaintiff's injuries to his neck and back, his pain, and his inability to sleep were a serious medical condition under the FMLA.

36. After the December 31, 2010 accident, Plaintiff continued to work for Defendants while receiving medical treatment. However, on several occasions, in February

and March, Plaintiff was required to take off work for said medical care and/or treatment or missed time from work for said medical care and treatment.

37.     When Plaintiff missed time from work following the automobile accident, Plaintiff had a physician note excusing him from work or had a doctor's appointment to treat said condition.

38.     When Plaintiff was absent from his employment he used his paid time off ("PTO").

39.     The Defendants knew about the Plaintiff's accident and knew about his medical condition and/or medical treatment.

40.     Plaintiff continued to receive medical care and use his PTO until approximately March 14, 2011, when he exhausted his PTO.

41.      Up to the time in which the Plaintiff exhausted his PTO, the Defendants did not advise the Plaintiff of his rights under the Family Medical Leave Act (FMLA) and/or did not advise the Plaintiff that he had the right to protect his employment under the FMLA.

42.     After February 2, 2011, and up to the time in which the Plaintiff exhausted his PTO, the Defendants did not advise the Plaintiff of his rights under the Family Medical Leave Act (FMLA) and/or did not advise the Plaintiff that he had the right to protect his employment under the FMLA.

43.     The Defendants were aware that the Plaintiff's medical condition would qualify for protection under the FMLA.

44.     After the exhaustion of his PTO, about March 14, 2011, and while still receiving medical treatment, Defendants advised the Plaintiff that he need to apply for FMLA, which the Plaintiff did apply for.

45.     At the time that the Plaintiff applied for FMLA, he requested approximately two weeks of FMLA leave to recover from his injury(ies) and condition(s).

46.     Plaintiff complied with the Defendants policies and procedures to apply for FMLA leave, including submitted the appropriate documents as requested to the Defendants.

47.     On or about March 25, 2011, the Plaintiff contacted his supervisor and stated his intent to return to work on March 28, 2011.  However, they advised the Plaintiff that he could not return to work as his FMLA leave was still being processed.

48.     On April 5, 2011, the Plaintiff was advised by his supervisor, Talma Carstarphen, that he needed to be in the office on April 6, 2011.  That same day, April 5, 2011, the Defendant received an email from Brooke Stover, advising that his FMLA leave had been denied.

49.     When the Plaintiff was finally allowed to return to work on April 6, 2011, he was advised that his FMLA leave request was denied by the Defendants.

50.     On or around April 6, 2011, the Plaintiff was terminated from his employment with Defendants.

51.     Plaintiff was terminated due to his absences related to his medical condition.

## COUNT ONE

### Family Medical Leave Act – Interference

### (Against All Defendants)

*Reginald Slack v. Emergency Medical Service Corporation, et al*
Page 8

52.    Plaintiff incorporates all preceding paragraphs above as if fully incorporated herein.

53.    Plaintiff was involved in an automobile accident on December 31, 2010, of which the Defendants had full knowledge.

54.    Plaintiff was, at all times relevant, an employee of Defendants.  As of at least February 2, 2011, the Plaintiff was entitled to take leave under the FMLA in order to recover from his injuries and receive any necessary medical care.

55.    Defendants were at all relevant times subject to the requirements of the Family Medical Leave Act.

56.    Pursuant 29 C.F.R. § 825.113, FMLA leave can be provided to an employee who, in addition to meeting the other criteria, suffers from a "serious health condition." For the purpose of that section, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves inpatient care as defined in § 825.114 OR continuing treatment by a health care provider pursuant to § 825.115 (emphasis added).

57.    Pursuant to C.F. R. 29 § 825.115, a serious health condition involving continuing treatment by a health care provider includes, but is not limited to, chronic conditions that require any period of incapacity or treatment for such incapacity. A chronic serious health condition is one which "requires periodic visits (at least twice a year) for treatment by a health care provider, continues over an extended period of time, and may cause episodic rather than a continuing period of incapacity…" (emphasis added).

58.     Plaintiff suffered injuries in the December 31, 2010, automobile accident that resulted in his receipt of ongoing medical treatment, at times resulting in an incapacity to return to work and at other times needing periodic leave.

59.     Plaintiff's condition falls within the meaning of "serious health condition" as defined by § 825.113 and, therefore, he is entitled to FMLA leave.

60.     Plaintiff's health condition was adversely affected by his injuries and inhibited/effected his ability to perform his normal duties associated with his position with Defendants.

61.     Plaintiff should have been placed on notice by the Defendants in regard to his ability to request FMLA leave from Defendants beginning, at least, by February 2, 2011.

62.     Plaintiff should have been placed on notice by the Defendants in regard to his ability to request FMLA leave during in February and March, 2011.

63.     Plaintiff should have been placed on notice by the Defendants in regard to his ability to request FMLA leave prior to exhausting his PTO.

64.     At all relevant times, Defendants had the ability to control whether Plaintiff could take a leave of absence and how that absence would be designated.

65.     During his employment with Defendants, after February 2, 2011, Plaintiff was not placed on notice in regard to his ability to request and/or obtain FMLA leave until his paid time off ("PTO") was exhausted on or about March 14, 2011.

66.     The Defendants violated 29 CFR § 825.300

67.     The Plaintiff suffered harm to his employment due to the Defendants failure to timely designate leave or provide the Plaintiff notice of his rights in accordance with the FMLA and applicable regulations.

68.     Based on the Plaintiff's medical condition, he was absent from work on several occasions (prior to exhausting his PTO) which caused harm to his employment status and/or was the cause of his termination from Defendants.

69.     Defendants contend that they counseled the Plaintiff due to his abscesses prior to the expiration of his PTO.

70.     The Defendants knew that the Plaintiff was taking time off work in February and March 2011 due to his injury and his continued treatment for the injury.

71.     Defendants were aware Plaintiff's absences could be FMLA qualifying.

72.     The Defendant's actions, among other actions, of not placing the Plaintiff on notice of his ability to apply for FMLA, prior to exhausting his PTO, and their failing to notify him that his absences were FMLA qualifying, and using said absences against him constitutes interference with the Plaintiff's ability to exercise his rights under the FMLA.

73.     As a result of the Defendants actions, Plaintiff lost his employment with the Defendants and has been damaged to include lost wages; loss of fringe benefits; front pay; and liquidated damages equal to the amount of lost wages, and loss of fringe benefits.

74.     Plaintiff has also incurred attorney fees and his attorney is entitled to fees and cost in bringing this action.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants as follows: Monetary damages for lost wages and lost fringe benefits in an amount to be proved at trial; front pay; Liquidated damages in an amount equal to the lost wages, fringe benefits and front pay; An Order reinstating Plaintiff to his same position, the same or substantially the same shift, the same days off and the same seniority that he had at the time of his termination; Declaratory judgment that the Defendants violated the FMLA; Compensatory damages; and the Plaintiff's attorney fees and costs incurred herein.

## COUNT TWO

### Family Medical Leave Act – Interference

75. Plaintiff incorporates all preceding paragraphs above as if incorporated herein.

76. After the Plaintiff exhausted his PTO, the Defendants, for the first time, notified the Plaintiff of his right to use FMLA leave.

77. The Defendants required the Plaintiff complete paperwork to request FMLA leave (or other paperwork , including obtaining a certification from the Plaintiff's health care provider indicating the need for same.)

78. The Plaintiff completed the FMLA paperwork as requested by the Defendants and turned same into the Defendants.

79. The Plaintiff's healthcare provider certified that the Plaintiff suffered from a serious medical condition and that Plaintiff needed time off work.

80. The Plaintiff's healthcare provider certified that the Plaintiff 's leave from work was medically necessary.

81.     The Plaintiff requested leave for approximately two (2) weeks.

82.     Plaintiff attempted to return to work on March 28, 2011, but he Defendants refused.

83.     Before April 5 2011, the Defendants never notified the Plaintiff that his request for FMLA leave had been denied.

84.     Defendants never asked for an Independent Medical Examination or second opinion to verify or confirm the Plaintiff's medical condition or need for FMLA leave.

85.     However, on April 6, 2011, when the Plaintiff was allowed to return to work, he was terminated by the Defendants.

86.     The Plaintiff was terminated due to excessive abscesses.

87.     The Defendants improperly denied the Plaintiff's request for FMLA.

88.     The absences which were the basis of the Plaintiff's termination were absences related to the medical leave/leave after February 1, 2011, wherein the Plaintiff was seeking medical care and/or requesting leave under the FMLA for his serious medical condition.

89.     The Defendants' actions of not approving the Plaintiff's FMLA leave; not advising the Plaintiff that his request for FMLA leave had been denied; not giving the Plaintiff the opportunity to provide additional medical documentation before denying his FMLA leave; not requesting a second opinion or independent medical examination before denying the Plaintiff's FMLA leave; firing the Plaintiff for a valid request for FMLA leave; not allowing the Plaintiff to return to work; and using the absences that occurred after February 1, 2011, and while the Plaintiff

was requesting FMLA leave negatively to terminate him constitutes interference with the Plaintiff's ability to exercise his rights under the FMLA.

90.     As a result of the Defendants actions, Plaintiff lost his employment with the Defendants; has been damaged to include lost wages; loss of fringe benefits; front pay; and liquidated damages equal to the amount of lost wages, lost fringe benefits.

91.     Plaintiff has also incurred attorney fees and his attorney is entitled to fees and cost in bringing this action.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants as follows:  Money damages for lost wages and lost fringe benefits in an amount to be proved at trial; front pay; Liquidated damages in an amount equal to the lost wages, fringe benefits and front pay; An Order reinstating Plaintiff to his same position, the same or substantially the same shift, the same days off and the same seniority that he had at the time of his termination; Declaratory judgment that the Defendants violated the FMLA; Compensatory damages; and Plaintiff's attorney fees and costs incurred herein.

### COUNT THREE
**Family Medical Leave Act - Retaliation**

92.     Plaintiff incorporates all preceding paragraphs above as if incorporated herein.

93.     As an employee of an employer within the meaning of the FMLA, Plaintiff was entitled to seek up to 12 weeks of leave for treatment of his serious health condition.

94.     As of at least February 2, 2011, Plaintiff was eligible for FMLA leave because he had worked for the Defendant for more than 1,250 hours in the 12 months preceding this date.

95.   At the time that Plaintiff requested his FMLA leave, he was eligible for such leave because he had worked for the Defendant for more than 1,250 hours in the 12 months preceding his request.

96.   Defendant's action in firing the Plaintiff and denying FMLA leave violated 29 U.S.C. Section 2615 by denying Plaintiff's right to attempt to exercise his rights under the FMLA.

97.   As a result of the Defendants actions, Plaintiff lost his employment with the Defendants; has been damaged to include lost wages; loss of fringe benefits; front pay; and liquidated damages equal to the amount of lost wages, and lost fringe benefits.

98.   Plaintiff has also incurred attorney fees and his attorney is entitled to fees and cost in bringing this action.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants as follows: money damages for lost wages and lost fringe benefits in an amount to be proved at trial; front pay; liquidated damages in an amount equal to the lost wages, fringe benefits and front pay; an Order reinstating Plaintiff to his same position, the same or substantially the same shift, the same days off and the same seniority that he had at the time of his termination; declaratory judgment that the Defendants violated the FMLA; compensatory damages; plaintiff's attorney fees and costs incurred herein.

## <u>PLAINTIFF DEMANDS TRIAL BY JURY</u>

Respectfully submitted by,

s/ Jeremiah J. Talbott

*Reginald Slack v. Emergency Medical Service Corporation, et al*
Page 15

JEREMIAH J. TALBOTT, P.A.
245 E. Intendencia Street
Pensacola, Florida 32502
(850) 437-9600
(850) 437-0906 (Facsimile)
jj@talbottlawfirm.com
Florida Bar No.: 0154784
*Attorney for Plaintiff*